OHIO STATE BAR ASSOCIATION *v.* JACKEL.

[Cite as *Ohio State Bar Assn. v. Jackel,*
118 Ohio St.3d 186, 2008-Ohio-1981.]

(No. 2007–2299—Submitted January 9, 2008—Decided May 1, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Katherine E. Jackel of Ann Arbor, Michigan, Attorney Registration No. 0077384, was admitted to the Ohio bar in 2004. Relator, Ohio State Bar Association, filed a complaint in August 2007 charging respondent with several violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline considered the cause on the parties' consent-to-discipline agreement. See Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel accepted the agreement, including the statement of facts and violations and the agreed sanction. The board also accepted the agreement.

{¶ 2} Consistent with the agreement, the board recommends that we suspend respondent from the practice of law for two years. We adopt the recommended sanction for the admitted misconduct.

## Misconduct

{¶ 3} In 1999, respondent began accepting clients from United Financial Systems Corporation ("United Financial"), a company that uses direct mailings to market estate-planning services in Ohio and other states. United Financial hired nonlawyers to meet with those who responded to mailings and indicated an interest in the services offered. United Financial representatives met with prospective clients to obtain personal and financial information necessary for estate planning, such as the clients' children's names and lists of assets. The

United Financial representatives would also discuss various options for estate planning, including the documents that could be prepared for the client. The representatives would forward the information collected—and the client's payment—directly to United Financial, who would then assign the client's file to respondent.

{¶ 4} Respondent worked with United Financial from March 1999 until sometime in 2000, while licensed to practice law in Indiana. In late 2002, respondent moved to Ohio and resumed her relationship with United Financial. Between 2002 and 2004, respondent lived in Ohio and performed estate-planning services for Indiana residents, both directly and through United Financial. In 2004, respondent passed the Ohio bar examination and began accepting referrals from United Financial of clients who lived in Ohio.

{¶ 5} In December 2004, United Financial forwarded Mary Jane Momot's information to respondent, and respondent spoke with Momot by phone after receiving this information. After speaking with her by phone on one other occasion, respondent prepared estate-planning documents for Momot and forwarded those documents to United Financial. Respondent never met with Momot. Instead, a United Financial representative took the estate-planning documents prepared by respondent to Momot for her signature. United Financial charged Momot $2,495 for her estate-planning package, and United Financial paid respondent $175 for preparing Momot's documents.

{¶ 6} Respondent moved to Michigan in April 2005, where she continued performing services for Ohio and Indiana residents through United Financial. Respondent ended her affiliation with United Financial sometime in March 2006.

{¶ 7} Respondent stipulated and the board accepted that respondent's acts set forth above constituted violations of DR 2–103(C) (prohibiting a lawyer from requesting an organization to recommend or promote use of the lawyer's services), 3–101(A) (prohibiting a lawyer from aiding a nonlawyer in the unauthorized practice of law), 3–101(B) (prohibiting a lawyer from practicing law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction), 3–102(A) (prohibiting a lawyer from sharing legal fees with a nonlawyer), and 4–101(B)(1) (prohibiting a lawyer from knowingly revealing a client's confidences or secrets).

## Recommended Sanction

{¶ 8} The parties also stipulated in the agreement to mitigating factors for the panel's consideration. See BCGD Proc.Reg. 10. The parties agreed that respondent had no prior disciplinary record. BCGD Proc.Reg. 10(B)(2)(a). Further, there was no evidence of a dishonest or selfish motive, BCGD Proc.Reg. 10(B)(2)(b), and when respondent became aware that her conduct was in violation

of the Disciplinary Rules, she terminated her relationship with United Financial. Respondent was also cooperative during the disciplinary proceedings and disclosed information fully and freely to the board. BCGD Proc.Reg. 10(B)(2)(d).

{¶ 9} The parties recommend that respondent be suspended from the practice of law in Ohio for two years. The board accepted the parties' agreed sanction.

### Review

{¶ 10} Based on the violations admitted in the consent-to-discipline agreement, we accept the board's recommendation of a two-year suspension.

{¶ 11} Respondent is therefore suspended from the practice of law in Ohio for two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Freund, Freeze & Arnold and Jennifer L. Hill; Plunkett & Cooney and Amelia A. Bower; and Eugene P. Whetzel, for relator.

Reminger & Reminger Co., L.P.A., and Gregory D. Brunton, for respondent.